# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

KEVIN P. O'NEILL,

        Plaintiff,

        v.                               Case No. 05-C-0306

UNITED STATES DEPARTMENT OF JUSTICE,

        Defendant.

ORDER DENYING THE GOVERNMENT'S MOTION TO STRIKE (DOC. #28), GRANTING THE PLAINTIFF'S MOTION FOR JUDICIAL NOTICE (DOC. #21), TERMINATING THE PLAINTIFF' S MOTION FOR SUMMARY JUDGMENT (DOC. #17) AND GRANTING IN PART AND DENYING IN PART THE GOVERNMENT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. #7)

        Plaintiff, Kevin P. O'Neill, a federal prisoner proceeding *pro se*, filed this action seeking judicial review under the Freedom of Information Act, 5 U.S.C. § 552. Before the court are cross-motions for summary judgment, the government's motion to strike the plaintiff's motion for summary judgment and the plaintiff's motion for judicial notice.

## BACKGROUND OF THE CASE

        On June 8, 2004, the plaintiff made an FOIA request to the Bureau of Alcohol, Tobacco and Firearms (ATF), Disclosure Division, seeking "unredacted copies of the attached three pages of reports authored by special agents Christopher L. Bayless and David J. Balkema, Oakbrook Terrace II." (Compl. Appx. 1). The ATF denied the request claiming that the plaintiff had not provided enough information to conduct a search. The plaintiff appealed the denial of his FOIA request to the Department of Justice, which affirmed the Disclosure Division's determination.

The plaintiff filed the instant action on March 21, 2005, alleging: (1) that he has a statutory right to the documents he requested on June 8, 2004; and (2) that the ATF has a general practice of utilizing unreasonable search methods to locate the documents he requests. The government answered the complaint on April 27, 2005, and the court set November 15, 2005, as the deadline for filing dispositive motions. However, on November 14, 2005, the plaintiff asked for an extension of time to file a motion for summary judgment because he was transferred from the United States Penitentiary in Leavenworth, Kansas, to the United States Penitentiary at Hazelton in Bruceton Mills, West Virginia. The court granted the request and gave the plaintiff until November 22, 2005, to file and serve his dispositive motion. Meanwhile, the government filed its motion for summary judgment on November 15, 2005.

Afterward, this case was administratively closed because the plaintiff had been placed in solitary confinement and did not have access to his legal materials. The November 29, 2005, closing denied the government's November 15, 2005, motion for summary judgment, advised the parties that they could reopen this case by contacting the court in writing, and directed the plaintiff to send the court and government's counsel a report by June 1, 2006, stating whether he is ready to proceed without any additional requests for extensions of time, or the case would be dismissed.

The plaintiff wrote the court a letter, filed May 18, 2006, with a copy to the government, stating that he was ready to proceed and that he would be responding to the government's motion for summary judgment. Then, on June 2, 2006, the plaintiff filed his cross-motion for partial summary judgment and supporting brief. A brief in opposition to the government's summary judgment motion, and a motion for judicial notice of testimony given

2

by the Bureau of Alcohol Tobacco and Firearms Special Agent Ronald J. Holmens were filed by the plaintiff on June 5, 2006, along with the plaintiff's declaration under 28 U.S.C. § 1746.

On June 9, 2006, this case was reopened and the government's November 15, 2005, motion for summary judgment was reinstated.

## STANDARD OF REVIEW

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id*. A fact is material, when it relates to a dispute that "might affect the outcome of the suit." *Id*.

The Freedom of Information Act (FOIA) was enacted to maintain an open government and to ensure the existence of an informed citizenry as well as to "check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). It is to be construed broadly to provide the public with information in accordance with its purposes, and the exemptions from production are to be construed narrowly. *United States Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988).

Section 552(a)(4)(B) of the FOIA provides that:

On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the

> District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter *de novo*, and may examine the contents of such agency records *in camera* to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action. In addition to any other matters to which a court accords substantial weight, a court shall accord substantial weight to an affidavit of an agency concerning the agency's determination as to technical feasibility under paragraph (2)(C) and subsection (b) and reproducibility under paragraph (3)(B).

5 U.S.C. § 552(a)(4)(B).

It is common for summary judgment to be used in deciding FOIA cases. *Cooper Cameron Corp. v. United States Dep't of Labor, Occupational Safety, and Health Admin.*, 280 F.3d 539, 543 (5th Cir. 2002); *Struth v. FBI*, 673 F. Supp. 949, 953 (E.D. Wis. 1987). "Summary judgment is available to the government in an FOIA case where the agency proves that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester. *Miller v. United States Dep't of State*, 779 F.2d 1378, 1382 (8th Cir. 1985) (citing *Weisberg v. United States Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983)); *see also Patterson v. IRS*, 56 F.3d 832, 836 (7th Cir. 1995). To discharge this burden, the government "must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *Miller*, 779 F.2d at 1383-84 (quoting *Nat'l Cable Television Ass'n, Inc. v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)).

4

**PRELIMINARY MATTERS**

The government has moved to strike the plaintiff's motion for summary judgment on grounds that it is untimely. In the present case, the plaintiff was given an extension of time until November 22, 2005, in which to file a dispositive motion. The plaintiff did not file his motion for summary judgment until June 2, 2006. However, this case was administratively closed from November 29, 2005, until June 9, 2006, because the plaintiff did not have access to his legal materials. Inasmuch as the plaintiff's failure to timely file a motion for summary judgment may have been the result of being denied access to legal materials, it is inappropriate to strike his motion for summary judgment motion as untimely.

On the other hand, it is appropriate to construe the plaintiff's motion as a response to the government's summary judgment motion. Inasmuch as it responds to the government's arguments concerning jurisdiction and mootness. The motion presents no other grounds on which summary judgment could be awarded. Therefore, the plaintiff's motion for summary judgment will be terminated, and the court will consider the plaintiff's responsive arguments when addressing the government's motion for summary judgment.

Next, the government objects to the submission of certain documents attached to the plaintiff's response to the government's motion for summary judgment. In particular, the government avers that pages 23 through 26 of the plaintiff's response, which are labeled as Exhibits 2.0, 2.1, 2.2 and 3.0, originate from unknown sources and are not attached to depositions, answers to interrogatories, admissions or affidavits associated with this case.

In granting a motion for summary judgment, a court may consider any materials that would be admissible at trial, including properly authenticated and admissible documents or exhibits. *Smith v. City of Chicago*, 242 F.3d 737, 741 (7th Cir. 2001). To be admissible,

5

Case 2:05-cv-00306-CNC   Filed 03/26/07   Page 5 of 20   Document 31

documents must be authenticated by and attached to an affidavit that meets the requirements of Fed.R.Civ.P. 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence. 10A Charles Alan Wright, *Federal Practice and Procedure* § 2722, at 379-80 & 382-84 (1998).

In Exhibits 2.0, 2.1 and 2.2, the plaintiff presents the affidavit of Ira Robins. It appears that the affidavit was filed in connection with a professional responsibility proceeding. However, the document is devoid of a case number or caption. Further, the plaintiff has made no effort to authenticate the document and he has given no indication that he is an affiant through whom the affidavit could be admitted into evidence. Therefore, the court shall disregard Exhibits 2.0, 2.1 and 2.2.

Exhibit 3.0 is a copy of a document entitled "Report of Investigation - Continuation Sheet." The report appears to have been generated by the ATF in association with investigation number 33118-91-0036-G. The report as presented to the court is incomplete. Specifically, the document states that it is the second page of a three-page report. However, even if the report were complete, the plaintiff has given no indication that he is an affiant through whom the report could be admitted into evidence. For these reasons, the court will also disregard Exhibit 3.0 when addressing the parties' motions for summary judgment.

Next, the plaintiff has asked the court to take judicial notice of the testimony of ATF Special Agent Ronald J. Holmes. As grounds for his request, the plaintiff states that Holmes' testimony will show that the information the plaintiff requested is in the public domain. The governments do not object to the plaintiff's request. Moreover, pursuant to Fed.R.Evid.

201 this court may take judicial notice of official court records. Accordingly, the plaintiff's motion for judicial notice will be granted.

Finally, the complaint arguably includes a claim that the government has a policy of failing to make reasonable attempts to locate documents requested by the plaintiff. *See, e.g., Payne Enterprises, Inc. v. United States of America*, 837 F.2d 486 (D.C. Cir. 1988). Insofar as the government has failed to advance any argument in response to this claim, the court construes the government's motion as one for partial summary judgment.

**GOVERNMENT'S PROPOSED FINDINGS OF FACT AND FACTUAL BACKGROUND**

On June 8, 2004, the ATF Disclosure Division in Washington, D.C., received a letter from the plaintiff requesting unredacted copies of various documents. (Affidavit of Averill P. Graham [Graham Aff.] ¶ 3 & Ex. A). This letter states, in part,

> Dear Disclosure Specialist:
>
> This is a non-commercial request pursuant to the Freedom of Information Act, 5 U.S.C. § 552, as amended, and the Privacy Act of 1974, 5 U.S.C. § 552a.
>
> I am requesting unredacted copies of the attached three pages from reports authored by special agents Christopher L. Bayless and David J. Balkema, Oakbrook Terrace II. All three documents are from "Operation Duster," and were reviewed by John J. Ruggero, Group Supervisor, Oak Brook II, and approved by Richard A. Rawlins, Special Agent in Charge - Chicago Field Division.

(Compl. Appx. 1 & 2).

By letter of June 24, 2004, the Disclosure Division responded to the plaintiff's request, stating "[t]he pages you have provided do not contain a case number of the name of the investigation. Providing the names of ATF Special Agents is not enough information to conduct a search." (Compl. Appx. 6). The letter further advised the plaintiff that he had

7

a right to an administrative appeal and that any such appeal must be received within sixty days of June 24, 2004. *Id*.

On July 2, 2004, the Office of Information and Privacy (OIP) received the plaintiff's appeal of the June 24, 2004, decision. (Graham Aff. ¶ 5 & Ex. C). The appeal reiterated the information set forth in the June 8, 2004, request and added that "one phone call to the Oakbrook Terrace, Illinois Field Office would have located the requested documents." (Compl. Appx. 8). Even with this new information the appeal was considered unresponsive to the delinquencies of the plaintiff's initial FOIA request. (Graham Aff. ¶ 5 & Ex. C).

On July 12, 2004, the plaintiff wrote to OIP, stating that "[e]ven though I believe that was a shameful response and is in circumvention with the BATF's statutory responsibilities, the investigation number for two of the documents is 20714-91-0047-Y (Operation Duster). The third document, labeled Exhibit 2(c) is associated with investigation number 33431-94-0048-R (Wolf, David., et. al.)." (Compl. Appx. 9). The OIP acknowledged receipt of this information on July 16, 2004. (Graham Aff. ¶ 6 & Ex. D). At that time, OIP informed the plaintiff that there was a substantial backlog of FOIA requests and that the resolution of his appeal would be forthcoming. (Graham Aff. ¶ 6 & Ex. D).

After receiving an ATF case number, the first step in conducting a search is to query the Treasury Enforcement Communications System (TECS). (Graham Aff. ¶ 24). TECS is a text-based computerized information system run by the United States Customs Service, which contains information that may be of interest to law enforcement agencies designated to identify individuals and businesses suspected of or involved in violations of federal law. *Id*. ATF records located with TECS include: wanted persons and fugitives;

known and suspected violators of laws falling within the jurisdiction of ATF; felons and dishonorably discharged veterans who have requested relief to own firearms and/or explosives under the Gun Control Act of 1968; and gangs and terrorists. *Id*.

The TECS system contains seven record subsections: People, Businesses, Aircraft, Firearms, Vehicles, Vessels, and Things. *Id*. The ATF performs an average of 130,000 queries per month against records in the following subsections: People, Businesses, Firearms and Vehicles. *Id*. These queries reveal ATF Investigation numbers that correspond to a specific field division where any file would be located. *Id*.

Utilizing the ATF Investigative numbers the plaintiff had provided, the Disclosure Divisions conducted a search of TECS. (Graham Aff. ¶ 25). It was determined that file number 20714-91-0047-Y did not contain any responsive information. (Graham Aff. ¶ 15; Pl.'s Response to D.'s Proposed Findings of Fact ¶ 21).

On March 4, 2005, the OIP responded that the Disclosure Division had conducted an exhaustive search and the June 24, 2004, decision of the ATF was affirmed. (Graham Aff. ¶ 7).

The plaintiff filed a civil complaint against the Department of Justice in the United States District Court for the Eastern District of Wisconsin on March 27, 2005. (Graham Aff. ¶ 8). After receipt of the complaint, the ATF's Disclosure Division and Office of Chief Counsel undertook another search to locate the documents requested by the plaintiff. (Graham Aff. ¶ 9). Using the information provided by the plaintiff, the ATF believed that the responsive records would be located in the ATF's Chicago Field Division. *Id*.

Several ATF Special Agents were contacted to determine if they could provide specific information regarding the criminal file these documents were associated with. *Id*.

Eventually, it was determined that all documents requested by the plaintiff originated in the Chicago Field Division. (Supplemental Affidavit of Averill P. Graham [Graham Aff. Supp. ¶ 3). However, one document (the Balkema report) was utilized by the United States Attorney's Office for criminal prosecution in Milwaukee. *Id*. This document was transmitted from the Chicago Field Division through the Milwaukee Field Division to the U.S. Attorney's Office. *Id*.

Ultimately, four documents were released to the plaintiff in response to his FOIA request. (*See* Graham Aff. Ex. F). Documents 1, 2, and 3 are three pages of a 14-page Report of ATF Investigation Number 33116-93-2533. (Graham Aff. Ex. F at 2-4). Approximately 100 redactions were made to Documents 1, 2, and 3. *See id.*

Document 4 is a copy of a January 22, 1997, statement made by ATF Special Agent David J. Balkema. (Graham Aff. Ex. F at 5). Document 4 has been redacted in three places. *See id.*

The individuals whose identities have been redacted are not the plaintiff. (Graham Aff. ¶ 14). And, the plaintiff has not presented waivers which would permit the release of third party information. *Id*. The individuals' names and identifying information that were redacted were compiled in connection with an investigation into violations of various crimes including a gang related murder, use of a firearm during a felony, and continuing criminal enterprise. (Graham Aff. ¶ 15).

## ANALYSIS

According to the plaintiff, he should have been provided with unredacted copies of Documents 1, 2, 3 and 4. In response, the government asserts that this action should be dismissed on the following grounds: (1) this court lacks jurisdiction; (2) the case is moot; and (3) the information redacted from Documents 1, 2, 3, and 4 is exempt from disclosure.

1.  **Jurisdiction**

In its November 15, 2005, motion for summary judgment, the government asserts that this court lacks jurisdiction because the requested documents are located in the ATF's Chicago Field Division office. The government has since withdrawn this argument because one of the requested documents (Document 4) was transmitted to the ATF's Milwaukee Office for use in a criminal prosecution. However, an initial comment is necessary with respect to the government's jurisdiction argument.

Subject matter jurisdiction, venue, personal jurisdiction and service of process are related but independent concepts and all four requirements must be satisfied in every case. *See* 4 Wright & Miller, *Federal Practice and Procedure* § 1063 at 329 (2002). In the present case, the docket indicates that service of process and personal jurisdiction have been satisfied. Subject matter jurisdiction has been established because the FOIA presents a federal question under 28 U.S.C. § 1331. Thus, the only remaining question is whether venue is proper in the Eastern District of Wisconsin.

As to venue, the FOIA provides,

> On complaint, the district court of the United States in the district in which the complainant resides, or has principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.

5 U.S.C. § 552(a)(4)(B).

Section 552(a)(4)(B) is a venue provision statute and not a jurisdiction conferring statute. *Jones v. United States Nuclear Regulatory Comm'n*, 654 F. Supp. 130 (D.D.C. 1987). Venue for an FOIA claim is proper in any district in which the complainant resides or has its

principal place of business, the district in which the records are situated, or in the District of Columbia. *In re Scott*, 709 F.2d 717, 720 (D.C. App. 1983).

It is undisputed that the plaintiff does not reside in the Eastern District of Wisconsin. However, Document 4 (the January 22, 1997, statement made by Special Agent David J. Balkema) is located in the ATF's Milwaukee Field Office. Thus, venue is proper as to Document 4. *See* 5 U.S.C. § 552(a)(4)(B).

Documents 1, 2 and 3 are located in the Chicago Field Division. Thus, it would initially appear that venue is not proper with respect to these documents. However, venue is a waivable defense, *see* Fed.R.Civ.P. 12(b)(3) and (h), and inasmuch as the government has expressly withdrawn its claim that the plaintiff lodged this action in the wrong district, any venue challenge has been waived. Hence, the requirements of subject matter jurisdiction, venue, personal jurisdiction and service of process have been satisfied.

**2.     Mootness**

The government asserts that this action is moot because the plaintiff has been provided with the documents he requested. In general, once the government has produced all records the plaintiff has requested, the claim for relief under FOIA becomes moot. *Walsh v. U.S. Dep't of Veterans Affairs*, 400 F.3d 535, 536-37 (7th Cir. 2005). However, the "tardy release" of documents does not render a case moot where a challenge to the agency's policy remains. *Byrd v. U.S. EPA,* 174 F.3d 239, 244-45 (D.C. Cir. 1999); *Payne Enterprises,* 837 F.2d at 491 ("So long as an agency's refusal to supply information evidences a policy or practice of delayed disclosure or some other failure to abide by the terms of the FOIA, and not merely isolated mistakes by agency officials, a party's challenge to the policy or practice cannot be mooted by the release of specific documents that prompted the suit.").

By his complaint, the plaintiff asserts that the government has a policy of unreasonably denying his FOIA requests. As discussed above, the government has not responded to this claim. While the plaintiff's allegations may ultimately prove to be unfounded, the court cannot at this time conclude that the government does not have a policy of denying the plaintiff's FOIA requests. Therefore, the present matter is not moot.

### 3. Plaintiff's FOIA Requests

The government contends that Documents 1, 2, 3 and 4 were redacted properly inasmuch as they are law enforcement records and disclosure would result in an unwarranted invasion of privacy of the third parties and law enforcement officers mentioned therein. Although the plaintiff does not dispute that he seeks disclosure of law enforcement records, he maintains that there are no privacy concerns at stake because: (1) the public interest in disclosure outweighs any individual privacy interest; and (2) the redacted information is already in the public domain.

The basic purpose of the FOIA is "to ensure an informed citizenry, vital to the functioning of a democratic society." *Robbins Tire & Rubber Co.*, 437 U.S. at 242. In an FOIA case the burden is on the governmental agency to prove that specific documents withheld fit within one of the statutory exemptions found in 5 U.S.C. § 552(b). *Miller*, 779 F.2d at 1383-84. To meet this burden and to assist the court in making its determination, the agency must provide detailed justification for its claims of exemption, addressing the requested documents specifically and in a manner allowing for adequate adversary testing. *See Antonelli v. Drug Enforcement Administration*, 739 F.2d 302, 303 (7th Cir. 1984)(per curiam).

In this case, the government claims that Documents 1, 2, 3, and 4 are exempt from disclosure under 5 U.S.C. § 552(b)(7)(C). The government agency has attempted to satisfy its obligation by submitting the declarations of Disclosure Division Chief Averril P. Graham and a Vaughn index. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

The test for determining the adequacy of a Vaughn index was set forth in *Founding Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979), where the court required that: (1) the index be contained in one document; (2) the index describe each deletion adequately; and (3) the index state the exemption claimed for each deletion and explain why the exemption is applicable to that deletion. Here, the government has provided a Vaughan index showing that one exemption, § 552(b)(7)(C), applies to the information contained in Documents 1, 2, 3 and 4. (*See* Graham Aff. at 10). In particular, the government maintains that Documents 1, 2, 3 and 4 were redacted to protect the privacy interests of third parties and law enforcement officers. Thus, the court believes that the Vaughan index provides an adequate basis for rendering a decision on the government's summary judgment motion. *See Wright v. Occupational Safety and Heath Administration,* 822 F.2d 642, 645-46 (7th Cir. 1987)(a Vaughn index "need only provide sufficient information to allow a court to review the agency's claimed exemption.").

The plaintiff claims that he should have been provided with unredacted copies of Documents 1, 2, 3 and 4 because the public interest in disclosure outweighs any individual privacy interest. Section 552(b)(7)(C) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that such records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." Generally, the privacy interests of law enforcement personnel are serious

14

and substantial because disclosure conceivably could result in annoyance and harassment of these individuals by the requesting party. *Stein v. Dep't of Justice and FBI*, 662 F.2d 1245, 1260 (7th Cir. 1981). And, "as a categorical matter," a third party's request for information about a private citizen can reasonably be expected to invade that citizen's privacy. *U.S. Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 780 (1989).

On the other hand, rules of nondisclosure based on the type of individual involved are disfavored. *Stern v. FBI*, 737 F.2d 84, 88 (D.C. Cir. 1984). In deciding whether the release of particular information constitutes an "unwarranted" invasion of privacy, an agency must balance the privacy interest at stake against the public interest in disclosure. *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 777 (1989). The public interest to consider is whether disclosure meets the FOIA's core purpose to "shed light on an agency's performance of its statutory duties." 489 U.S. at 773. The requester's identity, purpose in making the request, and proposed use of the requested information have no bearing on this balancing test. *Id.* at 771. Rather, Congress intended to give any member of the public the same right to disclosure as someone with a special interest. *Id*.

The plaintiff contends that the public has an interest in the disclosure of the identities of ATF Special Agents Christopher L. Bayless and Ronald J. Holmes and Detective Gary Govekar of the Lake County, Indiana Sheriff's Department because of their involvement with the Midwest Cycle Intelligence Organization (MCIO). According to the plaintiff, the MCIO disseminated confidential information to promote violent conflicts between targeted motorcycle clubs. Moreover, Bayless, Holmes and Govekar allegedly failed to prevent the murder of Monty Mathias (a member of the Hell's Henchmen motorcycle club in Rockford, Illinois) by members of the Outlaws, a rival motorcycle club.

15

In *Nat'l Archives & Records Admin. v. Favish*, the Supreme Court held that, to outweigh a third party's privacy interest protected by Exemption 7(C), a requester "must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." 541 U.S. 157, 174-75 (2004). "Only when the FOIA requester has produced evidence sufficient to satisfy this standard will there exist a counterweight on the FOIA scale for the court to balance against the cognizable privacy interests in the requested records." 541 U.S. at 174-75. A "bald accusation" to this effect is not persuasive. *Oguaju v. United States*, 378 F.3d 1115, 1117 (D.C. Cir. 2004). As the Court has explained, "allegations of government misconduct are easy to allege and hard to disprove," *Crawford-El v. Britton*, 523 U.S. 574, 585 (1998), so courts must insist on a "meaningful evidentiary showing." *Favish*, 541 U.S. at 174-75.

In the present case, Documents 1, 2, 3 and 4 do not contain any information that would support the plaintiff's claim that the MCIO promoted violent conflicts between rival motorcycle gangs or that the MCIO failed to prevent Mathias' death. Indeed, the MCIO is not even mentioned in these documents. Nor do the requested documents confirm that Agents Bayless and Holmes and Detective Govekar are MCIO members or that they were in contact with rival motorcycle clubs. Moreover, it is unclear how the requested information would shed light on the ATF's performance of its statutory duties. *See Reporters Comm. for Freedom of the Press*, 489 U.S. at 773. Rather, it appears that the plaintiff has requested unredacted copies of Documents 1, 2, 3 and 4 to determine whether the MCIO acted unlawfully.[1] For

---

[1] For example, the plaintiff states that disclosure is necessary to demonstrate that in failing to prevent Mathias' death, "the MCIO members crossed the line from gross negligence to deliberate indifference which amounted to criminal recklessness," (Pl.s' Response to D.'s Mot. for Summary Judgment of June 5, 2006, at 14). Additionally, he claims that he "has produced compelling evidence showing that the MCIO agents did not observe their duty to uphold the civil liberties of American citizens." *Id*. at 18.

16

these reasons, the plaintiff has failed to make a showing that the public interest in the disclosure outweighs the privacy interests of Agents Bayless and Holmes and Detective Govekar.

Next, the plaintiff avers that disclosure is warranted because Documents 1, 2, 3 and 4 have entered the public domain. Courts have recognized that the privacy interest in non-disclosure of identifying information may be diminished where information is already in the public domain. *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276 (D.C. Cir. 1992). Under the public domain doctrine, materials not normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record. *Niagara Mohawk Power Corp. v. U.S. Dep't of Justice,* 169 F.3d 16, 19 (D.C. Cir. 1999).

To demonstrate that material has entered the public domain, the requester must "point to specific information in the public domain that appears to duplicate that being withheld." *Davis,* 968 F.2d at 1279; *Afshar v. Dep't of State*, 702 F.2d 1125, 1130-34 (D.C. Cir. 1983). That is, the party advocating disclosure it claims to be public domain bears the initial burden of production. *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999)(citing *Niagara Mohawk Power Corp.*, 169 F.3d at 19). "[W]ere it otherwise, the government would face the daunting task of proving a negative - that the requested information had not been previously disclosed." *Cottone*, 193 F.3d at 554.

According to the plaintiff, Documents 1, 2, 3 and 4 have entered the public domain because Agent Holmes testified about these documents during the plaintiff's criminal trial, *United States v. O'Neill*, No. 97-CR-0098. In response, the government claims that the plaintiff has failed to point to specific information demonstrating that these documents were moved into evidence.

17

Careful review of Agent Holmes' testimony reveals that during trial, semi-unredacted portions of Document 1 were read verbatim into the record. For example, during direct examination, Special Agent Holmes was asked,

> Now, it says: 'At approximately ten-thirty Ron Holmes' – and then it's all blacked out but I'll have to live with it I guess. 'Holmes further states that the information from the Lake County Source indicated the Outlaws were aware that the president owned a motorcycle shop in Rockford. The president, Roger Fiebrantz, does not own a motorcycle shop; however, Monte Mathias does. Holmes discussed further it was decided that if the Outlaws were surveilling the Tuesday night runs, they would see Monte leading a pack of bikes which would lead them to believe that he was the president of the club. Therefore, it was decided that Monte Mathias was probably the target of the Outlaws and not the president, Roger Fiebrantz.'

(Testimony of Special Agent Holmes, 4560:17-4561:3; Graham Aff. Ex. F at 2).

Review of Holmes' testimony suggests that Document 1 was moved into evidence as Exhibit 1994. *Id.* at 4559:14-16. Specifically, Agent Holmes was shown a copy of Exhibit 1994, and asked, "doesn't it state 'that possibly two members of the Wisconsin chapter of the Outlaws were on their way to Rockford to begin stalking the president to do something the following evening, possibly to kill him.'" *Id.* at 4560:12-15.

Review of Holmes' testimony further reveals that excerpts of Document 2 were read verbatim into the record when Special Agent Holmes was asked:

> Q: Does it say, 'During further conversation with Holmes, it was decided that the Outlaws would probably try to hit Monte sometime during the Tuesday run which would occur the following day.' Is that what it says?
>
> A. Yes, sir.

(Testimony of Special Agent Holmes 4618:13-17).

******

> Q: At this time plans were formulated to notify Monte Mathias the following morning to make him aware of the situation.' Is that what it says?
>
> A: Yes, sir.
>
> Q: 'Ron Holmes decided he would visit Monte in person to explain the situation in detail,' right?
>
> A: Yes, sir.
>
> Q: Then, the rest – first part of that sentence, the next sentence is blacked out. It says, 'Gray Govekar, the originator of the information, was going to contact Rockford P.D. that night,' doesn't it?
>
> A: Yes, sir.

(*Id*. at 4619:4-15).

Document 2 appears to have been moved into evidence as Exhibit 1995. For example, Attorney Marquis stated,

> So when I showed you 1995, if you recall, it reads 'Special Agent Dave Balkema drove to Rockford that morning to brief the State Police on the situation and coordinate the surveillance during that evening's run.'

(Testimony of Special Agent Holmes 4612:21-24; Graham Aff. Ex. F at 3).

In light of the foregoing, the court is not persuaded that the plaintiff has failed to point "to specific information in the public domain that appears to duplicate that being withheld." *Davis,* 968 F.2d at 1279; *Afshar,* 702 F.2d at 1130-34. Therefore, a genuine issue of material fact exists as to whether Documents 1 and 2 were properly redacted.

However, with respect to Documents 3 and 4, the plaintiff has submitted no evidence to corroborate his claim that the information he seeks is public domain. Specifically, there is no indication that information from Documents 3 and 4 was introduced into evidence

19

or otherwise "duplicated." See *Davis*, 968 F.2d at 1279. Thus, summary judgment is proper as to Documents 3 and 4. Accordingly,

**IT IS ORDERED** that the government's motion to strike (Doc. # 28) is **DENIED.**

**IT IS FURTHER ORDERED** that the plaintiff's motion for judicial notice (Doc. # 21) is **GRANTED.**

**IT IS FURTHER ORDERED** that the plaintiff's cross motion for partial summary judgment (Doc. # 17) is **TERMINATED.**

**IT IS FURTHER ORDERED** that the government's motion for partial summary judgment (Doc. # 7) is **GRANTED IN PART AND DENIED IN PART** as described herein.

Dated at Milwaukee, Wisconsin, this 26th day of March, 2007.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. DISTRICT JUDGE