# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

KEVIN P. O'NEILL,

        Plaintiff,

    v.                                    Case No. 05-C-0306

UNITED STATES DEPARTMENT OF JUSTICE,

        Defendant.

---

## ORDER GRANTING THE PLAINTIFF'S MOTION FOR JUDICIAL NOTICE (DOC. #33), GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. #37) AND DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. #47)

Plaintiff, Kevin P. O'Neill, a federal prisoner proceeding *pro se*, filed this action seeking judicial review under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. Before the court are cross-motions for summary judgment and the plaintiff's motion for judicial notice.

## BACKGROUND OF THE CASE

On June 2, 2004, the plaintiff made an FOIA request to the Bureau of Alcohol, Tobacco and Firearms (ATF), Disclosure Division, seeking unredacted copies of three specified pages of reports authored by special agents Christopher L. Bayless and David J. Balkema, Oakbrook Terrace II. Complaint Appendix 1. In response, the ATF informed the plaintiff that he had not provided enough information to conduct a search. The plaintiff appealed this determination to the Department of Justice, which affirmed the Disclosure Division's finding.

The plaintiff filed the instant action on March 21, 2005, alleging: (1) that he has a statutory right to obtain unredacted copies of four documents that he requested on June 8, 2004; and (2) the ATF has a policy of utilizing unreasonable search methods to locate the

documents he requests.  After the defendant filed its answer on April 27, 2005, the parties filed cross-motions for partial summary judgment.[1]   On March 26, 2007, the defendant's motion for partial summary judgment was granted, in part and denied, in part.  Specifically, the court found that there was a genuine issue of material fact as to whether Documents 1 and 2 (more specifically identified as pages 1994 and 1995) were properly redacted.  With respect to Documents 3 and 4, the court determined that summary judgment was proper because the plaintiff had submitted no evidence to corroborate his claim that the information therein had entered the public domain.  *O'Neill v. United States Department of Justice*, Case No. 05-C-306 at 19 (E.D. Wis. Mar. 26, 2007) (Doc. #31).  As a result, the court also ordered that the plaintiff's motion for partial summary judgment be terminated.  *Id.*

The parties have now each filed motions for summary judgment with respect to plaintiff's claim that the government had a policy of failing to contact agency personnel when attempting to locate documents and his claim that Documents 1 and 2 were not properly redacted.

## I.  PRELIMINARY MATTERS

On April 13, 2007, the plaintiff filed a motion for judicial notice under Federal Rule of Evidence 201.  In his motion, the plaintiff asks that the court take notice of CFR §§ 16.1 to 16.10, which set forth the procedures for disclosure of records under the FOIA.  To date, no response has been filed by the defendant.

Pursuant to Rule 201(b), Federal Rules of Evidence,

---

[1] Although captioned as a "motion for summary judgment," the court concluded that because the government had failed to advance any argument in response to plaintiff's claim that it had a policy of failing to make reasonable attempts to locate documents requested by him, its motion was more properly one for partial summary judgment.  *O'Neill v. United States Department of Justice*, Case No. 05-C-306, (E.D. Wis. Mar. 26, 2007) (Doc. #31.)

2

> A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

As a general rule, courts must take judicial notice of the Constitution and federal statutes. *See Marbury v. Madison*, 5 U.S. 137, 178-79 (1803); *see also* Jack B. Weinstein, *Weinstein's Federal Evidence* § 201.52(1)(a) (2nd ed. 2007). In addition, pursuant to 44 U.S.C. § 1507, the Code of Federal Regulations is required to be judicially noticed. Moreover, it appears that sections 16.1 to 16.10 are germane to plaintiff's claim that the defendant had a policy of failing to make reasonable attempts to locate documents he requested. Consequently, the plaintiff's motion for judicial notice will be granted.

## II. STANDARD OF REVIEW

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id*. For the fact to be material, it must relate to a dispute that "might affect the outcome of the suit." *Id*.

The Freedom of Information Act (FOIA) was enacted to maintain an open government and to ensure the existence of an informed citizenry as well as to "check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire*

3

*& Rubber Co.*, 437 U.S. 214, 242 (1978). It is to be construed broadly to provide the public with information in accordance with its purposes, and the exemptions from production are to be construed narrowly. *United States Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988).

Section 552(a)(4)(B) of the FOIA provides that:

> On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter *de novo*, and may examine the contents of such agency records *in camera* to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action. In addition to any other matters to which a court accords substantial weight, a court shall accord substantial weight to an affidavit of an agency concerning the agency's determination as to technical feasibility under paragraph (2)(C) and subsection (b) and reproducibility under paragraph (3)(B).

5 U.S.C. § 552(a)(4)(B).

It is common for summary judgment to be used in deciding FOIA cases. *Cooper Cameron Corp. v. United States Dep't of Labor, Occupational Safety, and Health Admin.*, 280 F.3d 539, 543 (5th Cir. 2002); *Struth v. F.B.I.*, 673 F. Supp. 949, 953 (E.D. Wis. 1987). "Summary judgment is available to the government in an FOIA case where the agency proves that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1382 (8th Cir. 1985) (citing *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983)); *see also Patterson v. I.R.S.*, 56 F.3d 832, 836 (7th Cir. 1995). To discharge this burden, the defendant "must prove that

each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *Miller*, 779 F.2d at 1383-84 (quoting *Nat'l Cable Television Ass'n, Inc. v. F.C.C.*, 479 F.2d 183, 186 (D.C. Cir. 1973)).

## III. UNDISPUTED FACTS

### A. Preliminary Matters

In compliance with Civil Local Rule 56.2(a), the defendant filed proposed findings of fact which identified those facts upon which there is no genuine issue and cited evidentiary material to support those factual propositions. The plaintiff did not file a response to the defendant's proposed factual findings; rather, he filed his own motion for summary judgment with proposed findings of fact. Thereafter, the defendant filed a response to plaintiff's proposed findings of fact which identified those findings to which it asserted there was a dispute and presented "additional propositions deemed to be relevant" to the plaintiff's motion for summary judgment. *See* Local Rule 56.2(b)(1) and (2).

Pursuant to the applicable local rules, "the Court must conclude that there is no genuine material issue as to any proposed finding of fact to which no response is set out." Civil Local Rule 56.2(e). Because the plaintiff has never directly responded to the defendant's proposed findings of fact or to the additional proposed findings of fact presented in response to the plaintiff's motion for summary judgment as contemplated under Civil Local Rule 56.2, I find that these facts are undisputed unless they were specifically contradicted by the affidavits proffered by the plaintiff in support of his own motion for summary judgment.[2]

_____

[2] On February 4, 2008, the plaintiff submitted a "Supplemental Declaration." Such document was filed many months after the close of briefing in connection with the parties' motions for summary judgment. In addition, such document is not contemplated under the local rules and the plaintiff did not seek leave of court to

**B. Relevant Undisputed Facts from the Defendant's Proposed Findings of Fact**[3]

The ATF's Disclosure Division processes a large number of FOIA requests utilizing limited resources. (Defendant's Proposed Findings of Fact [DPFF] ¶¶ 2-6 Declaration of Averill P. Graham III [Graham Decl. III] ¶ 32.) Upon locating a file number, the specialist must then request the file from the appropriate office and, depending on the subject matter or status of the case, will then discuss the contents of the file with various ATF personnel. (DPFF ¶ 7; Graham Decl. III ¶ 32.) Each specialist is responsible for reviewing and processing each file for release. *Id.* Any given FOIA request could generate documents from one page to 10,000 pages. (DPFF ¶ 8; Graham Decl. III ¶ 32.) If no responsive records are found, the requester is notified about his or her right to an administrative appeal and that the Disclosure Division will conduct a new search if there is additional information which might be helpful in locating responsive records. (DPFF ¶ 10; Graham Decl. III ¶.)

      **1.**      **FOIA Requests Relating to Documents 1 and 2 (Pages 1994 and 1995)**

On June 8, 2004, the ATF Disclosure Division in Washington, D.C., received a letter, by mail, from the plaintiff dated June 2, 2004, requesting unredacted copies of various documents. (DPFF ¶ 12; Declaration of Averill P. Graham I [Graham Decl. I] ¶ 3 & Ex. A).[4] This letter states, in part,

---

file it. Thus, the plaintiff's supplemental declaration is not being considered in resolving the motions before the court.

    [3] The defendant's proposed findings of fact are contained in its brief at pages 1 through 20. (Doc. #38.) A review of plaintiff's proposed findings of fact reveals that some of his proposed findings duplicate certain factual propositions presented by the defendant. In such instances, the court has also cited to the plaintiff's proposed finding of fact.

    [4] In this decision and order, "Graham Decl. I" refers to the Declaration of Averill P. Graham which was filed in this case on November 15, 2005, and is docketed as Document #9.

6

> Dear Disclosure Specialist:
>
> This is a non-commercial request pursuant to the Freedom of Information Act, 5 U.S.C. § 552, as amended, and the Privacy Act of 1974, 5 U.S.C. § 552a.
>
> I am requesting unredacted copies of the attached three pages from reports authored by special agents Christopher L. Bayless and David J. Balkema, Oakbrook Terrace II. All three documents are from "Operation Duster," and were reviewed by John J. Ruggero, Group Supervisor, Oak Brook II, and approved by Richard A. Rawlins, Special Agent in Charge - Chicago Field Division.

(*Id.*; Plaintiff's Proposed Findings of Fact [PPFF] ¶ 2[5]). The pages attached to the letter included redacted copies of pages numbered 1994 and 1995. *Id.* By letter of June 24, 2004, the Disclosure Division responded to the request, stating:

> In your June 2, 2004, request, you provided 3 documents which originated with this agency and asked for unredacted copies of these documents. The pages you have provided do not contain a case number or the name of the investigation. Providing the names of ATF Special Agents is not enough information to conduct a search.

(DPFF ¶¶ 13-15; Graham Decl. I ¶ 4 and Ex. B; PPFF ¶ 8.) The letter further advised the plaintiff that he had a right to an administrative appeal and that any such appeal must be received within sixty days of June 24, 2004. *Id.* One inaccuracy in the plaintiff's June 2, 2004, FOIA request was the statement that the documents were from "Operation Duster" when the requested documents were ultimately found under an investigation by the name of "Hell's Henchmen Motorcycle Club." (DPFF ¶ 16.)

---

[5] The plaintiff's "Proposed Findings of Fact" are set forth in pages one through fifteen of his brief in support of summary judgment. (Doc. #48.)

On July 2, 2004, the Office of Information and Privacy (OIP) received the plaintiff's appeal of the June 24, 2004, decision in which the plaintiff noted that he had provided the name of the investigation and the names of the authors of the documents. (DPFF ¶ 18; Graham Decl. I ¶ 5 & Ex. C; PPFF ¶ 15.) The plaintiff's appeal letter included no additional information by which a narrower search could be conducted. (DPFF ¶ 19; Graham Decl. I ¶ 5 and Ex. C.) The appeal was considered unresponsive to the deficiency of the plaintiff's initial FOIA request, and OIP advised plaintiff that it could not search the relevant databases without the case number or the investigation from which the documents originated. (DPFF ¶ 20; Graham Decl. I ¶ 5 & Ex. C.) Indeed, the investigative file numbers which the plaintiff provided to ATF on appeal were not the correct numbers associated with the requested document. (DPFF ¶ 17.) In response, the plaintiff wrote to OIP, stating:

> Even though I believe that was a shameful response and is in circumvention with the BATF's statutory responsibilities, the investigation number for two of the documents is 20714-91-0047-Y ("Operation Duster"). The third document, labeled "Exhibit 2 (C)," is associated with investigation number 33431-94-0048-R ("Wolf, David B., et al.").

(DPFF ¶ 23; Complaint at Appendix 9; PPFF ¶ 16.)

After receiving an ATF case number, the first step in conducting a search is to query the Treasury Enforcement Communications System (TECS). (DPFF ¶ 24; Graham Decl. I ¶ 24.) TECS is a text-based computerized information system run by the United States Customs Service, which contains information that may be of interest to law enforcement agencies designed to identify individuals and businesses suspected of or involved in violations of federal law. (DPFF ¶ 25; Graham Decl. I ¶ 24.) ATF records located with TECS include: wanted persons and fugitives; known and suspected violators of laws falling within the

Case 2:05-cv-00306-CNC   Filed 03/25/08   Page 8 of 25   Document 58

jurisdiction of ATF; felons and dishonorably discharged veterans who have requested relief to own firearms and/or explosives under the Gun Control Act of 1968; and gangs and terrorists. (DPFF ¶ 28; Graham Decl. I ¶ 24.)

The TECS system contains seven record subsections: People, Businesses, Aircraft, Firearms, Vehicles, Vessels, and Things. (DPFF ¶ 29; Graham Decl. I ¶ 24.) The ATF performs an average of 130,000 queries per month against records in the following subsections: People, Businesses, Firearms and Vehicles. (DPFF ¶ 30; Graham Decl. I ¶ 24.) These queries reveal ATF Investigation numbers that correspond to a specific field division where any file would be located. (DPFF ¶ 31; Graham Decl. I ¶ 24.)

Utilizing the ATF investigative numbers provided by the plaintiff (20714-91-0047-Y and 33431-94-0048-R), the Disclosure Divisions conducted a search of TECS. (DPFF ¶ 33; Graham Decl. I ¶ 25). It was determined that file number 20714-91-0047-Y and 33431-94-0048-R did not contain any responsive information. (DPFF ¶ 34; Graham Decl. I ¶ 15; Graham Declaration IV ¶ 8.)[6]

On March 4, 2005, the OIP affirmed the ATF's action with respect to plaintiff's request stating, in relevant part:

> The ATF informed you that it could not conduct a search of the relevant databases without the case number or the name of the investigation where these documents originated from. The ATF did conduct a search of the title "Operation Duster" and found no records. It has been determined that this response is correct.

---

[6] Plaintiff attempts to call this finding into question by asserting that "[n]either ATF or OIP conducted a search of the title: 'Wolf, David B., et. al.,' investigation number 33431-94-0048-R as provided by Mr. O'Neill." (O'Neill Decl. ¶ 18 (Doc. #48)). However, the plaintiff does not demonstrate that he has any personal knowledge of this fact as opposed to his own belief that such is the case. Affidavits based on "information and belief" – facts that the affiant believes are true, but which the affiant does not know are true – are not proper. *Toro Co. v. Krouse, Kern & Co., Inc.*, 827 F.2d 155, 162-63 (7th Cir. 1987); *see also Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir. 1987) (courts should disregard an affidavit that does not comply with the requirements of Rule 56(e), Federal Rules of Civil Procedure).

9

(DPFF ¶ 35; Graham Decl. I ¶ 7 & Ex. E; PPFF ¶ 17.) On March 27, 2005, Mr. O'Neill filed a civil complaint against the DOJ in U.S. District Court for the Eastern District of Wisconsin. (DPFF ¶ 36; Graham Decl. I ¶ 8; PPFF ¶ 21.)

After the receipt of the complaint, ATF's Disclosure Division and Office of Chief Counsel undertook another search to locate the documents requested by the plaintiff. (DPFF ¶ 37; Graham Decl. I ¶ 9.) Using the information the plaintiff provided in his various correspondence, ATF believed that responsive records would be located in ATF's Chicago Field Division. (DPFF ¶ 38; Graham Decl. I ¶ 9.) Several ATF Special Agents were contacted to determine if they could provide specific information regarding the criminal file with which these documents were associated. (DPFF ¶ 39; Defendant's Response to PPFF [Def.'s Resp. to PPFF] ¶ 18; Graham Decl. I ¶ 9.) Moreover, after the plaintiff provided the name and investigation numbers, a search was conducted for "David B. Wolf" and documents related to him were located within the United States Attorney's office. (Def.'s Resp to PPFF ¶ 18; Third Supplemental Declaration of Averill P. Graham [Graham Decl. IV] ¶ 8.) Eventually, it was determined that all documents requested by the plaintiff originated in the Chicago Field Division under Criminal Investigative file 33116-93-2533-L. (DPFF ¶¶ 40-41; Graham Decl. I ¶¶ 9 and 24; Graham Decl. II ¶ 3.) However, one document was utilized by the United States Attorney's Office for criminal prosecution in Milwaukee. (DPFF ¶ 42; Graham Decl. II ¶ 3.[7]) This document was transmitted from the Chicago Field Division through the Milwaukee Field Division to the United States Attorney's Office. *Id.*

---

[7] In this brief, "Graham Decl. II" followed by a number refers to the Declaration of Averill P. Graham filed in this matter on June 30, 2006. (Doc. #26.)

Ultimately, four redacted documents were released to the plaintiff in response to his FOIA request pursuant to 5 U.S.C. § 552(b)(7)(C). (DPFF ¶ 43; Graham Decl. I ¶ 9 & Ex. F; Graham Decl. II ¶ 3.) According to the exemption set forth in § 552 (b)(7)(C), the Disclosure Division withheld:

> (1) the names of Federal and state law enforcement agents as well as information by which those individuals could be identified; and

> (2) the names of third party individuals referenced in connection with the investigation either as witnesses or leads, as well as information by which those individuals could be identified.

(DPFF ¶ 44; Graham Decl. I ¶ 13.) Documents 1, 2 and 3 are three pages of a 14-page Report of ATF Investigation Number 33116-93-2533 and contain approximately 100 redactions.[8] *See O'Neill v. United States Department of Justice*, Case Number 05-C-306 at 10 (E.D. Wis. Mar. 26, 2007) (Doc. #31.)

The plaintiff presented no waivers which would permit release of individual third party information. (DPFF ¶ 46; Graham Decl. I ¶ 14.) The ATF withheld the names, titles, and other identifying information related to third party individuals and witnesses interviewed by ATF during the course of the investigation, law enforcement officers, and other private persons merely mentioned in ATF's files. (DPFF ¶ 47; Graham Decl. I ¶ 18.)

The records at issue in this case concern a violent 1994 interaction of two motorcycle gangs, the Hell's Henchmen and the Outlaw motorcycle gangs. (DPFF ¶ 67; Graham Decl. III ¶ 34.) The names and identifying information that were redacted were compiled in connection with an investigation into violations of various crimes, including a gang

---

[8] Only documents 1 and 2 remain at issue in the parties' motions for summary judgment.

related murder, use of a firearm during a felony, and a continuing criminal enterprise. (DPFF ¶ 68; Graham Decl. I ¶ 15.)

The ATF determined that releasing information regarding the witnesses referenced in the plaintiff's files has the very real potential to endanger such witnesses or cause harassment and harm to the witnesses' lives and reputations and may discourage future witnesses from cooperating with ATF. (DPFF ¶¶ 52-53; Graham Decl. I ¶19.) Thus, after balancing the interests at stake, ATF determined that certain personal information contained within its files must be withheld because its disclosure could reasonably be expected to cause the third parties referenced in its files and third-party witnesses embarrassment, harassment, and harm, and would do little, if anything, to aid the public understanding of the ATF. (DPFF ¶ 54; Graham Decl. I ¶19.) Pursuant to the exemption identified in § 552(b)(7)(C), ATF determined that disclosure of the names and identifying information of third parties who were investigated by ATF constituted an unwarranted invasion of these third parties' privacy, because being associated with the ATF criminal investigation into the plaintiff's unlawful actions carries a stigmatizing and negative connotation. (DPFF ¶ 55; Graham Decl. I ¶ 20.) The ATF concluded that the third parties possess a substantial privacy interest in not having this information disclosed and balanced those interests against any public interest in the disclosure. (DPFF ¶¶ 56-57; Graham Decl. I ¶ 20.) As a result, the ATF determined that there was no discernible public interest in the disclosure because releasing the names and identities of these third parties would not shed any light on ATF activities. (DPFF ¶ 58; Graham Decl. I ¶ 20.)

Pages 1994 and 1995 (Documents 1 and 2) were not released to the public in the full and unredacted form that plaintiff requests. (DPFF ¶ 70; Graham Decl. III ¶ 34.)

When the complaint in this case was filed on March 31, 2005, plaintiff included a copy of his June 2, 2004, FOIA request for unredacted copies of documents 1994 and 1995. (PPFF ¶¶ 61-62; Complaint Appendix 3-4.) Although the copies of documents 1994 and 1995 that accompanied the FOIA request were otherwise redacted, the following names were revealed: James Werdeniuk, Scott L. Hand, Robert J. Paul, Clarence Smith, ATF Special Agent Ron Holmes, Gary Govekar (Lake County Sheriff's Deputy) and Roger Fiebrantz (former president of Hell's Henchmen.) *Id.* The redacted versions of pages 1994 and 1995 that the plaintiff included with his June 2, 2004, request (which were also attached to his complaint in this case) are different from the redacted versions of pages 1994 and 1995 (Documents 1 and 2) that were ultimately provided to the plaintiff by the ATF on July 20, 2005. (PPFF ¶ 64; Complaint Appendix 3-4; Graham Decl. I, Exs. A and F.)

Neither page 1994 nor page 1995 was admitted into evidence in Case No. 97-CR-98. (DPFF ¶ 71; Declaration of Susan Knepel [Knepel Decl.] ¶¶ 2, 3.) The docket for *United States v. Kevin O'Neill, et al*, Case No. 97-CR-98 reflects that there are approximately 2028 docket entries and 39 volumes of records on the transcript list. (DPFF ¶ 73; Knepel Decl. ¶¶ 2, 3.) Agent Ron Holmes testified in the trial relating to *United States v. Kevin O'Neill, et al*, Case No. 97-CR-98, and his testimony is part of the record in that case and has its own docket entry at 1882. (DPFF ¶¶ 74-75; PPFF ¶ 65-67.) Agent Holmes was shown the documents identified as pages 1994 and 1995 during the trial and was questioned regarding those pages (Documents 1 and 2). (DPFF ¶ 80-81; PPFF ¶¶ 70-71; Def.'s Reply PPFF ¶¶ 68-71.) However, only certain sentences were quoted during the testimony and there is no evidence that these documents were read into the record in their entirety. *Id.*

However, the name of Special Agent Chris Bayless is in the record by way of Agent Holmes' testimony. (PPFF ¶ 71; Def.'s Resp. PPFF ¶ 71.)

## 2. History of Plaintiff's Other FOIA Requests

### a. April 9, 2002 Request[9]

On April 22, 2002, the Disclosure Division received a letter dated April 9, 2002, from the plaintiff asking ATF to provide information pertaining to Robert Ofcky, Jr. (DPFF ¶ 87.) Included with this request was a waiver signed by Mr. Ofcky Jr. authorizing the release of information to the plaintiff. (DPFF ¶ 87; Graham Decl. III ¶ 3 & Ex. A.) After the plaintiff agreed to pay estimated costs of $28.00, the ATF processed his request. (DPFF ¶¶ 88-89; Graham Decl. III ¶ 4 & Ex. B.) By letter dated July 16, 2002, the Disclosure Division advised the plaintiff that his FOIA request was granted in part, and that it was releasing disclosable portions of documents but withholding portions of the documents pursuant to the exemptions set forth in § 552 (b)(2), (b)(3), (b)(7)(C) and (b)(7)(E). (DPFF ¶¶ 91-92; Graham Decl. III ¶ 7.) One hundred and thirty-eight pages of documents were found responsive to the request out of which approximately 115 pages were disclosed in part, approximately twenty-three (23) pages were released in full, and three (3) pages were withheld in full. (DPFF ¶ 93; Graham Decl. III ¶ 7.)

The plaintiff was provided with instructions on how to file an administrative appeal. (DPFF ¶¶ 94-96; Graham Decl. III ¶¶ 7-8 & Ex. E.) Included with the plaintiff's appeal letter was an affidavit from Mr. Robert Ofcky, Jr. (DPFF ¶ 97; Graham Decl. III ¶ 8.) The affidavit was not an authorization for release, but details of contacts with specific ATF

---

[9] The plaintiff states that he does not dispute the defendant's version of events with respect to this request. *See* Plaintiff's Brief in Support, PPFF ¶ 27 (Doc. # 48.)

14

Special Agents provided by the plaintiff to "assist [ATF] in this appeal." (DPFF ¶ 98; Graham Decl. III ¶ 8 & Ex. F.)

By letter dated January 16, 2003, the Disclosure Division explained that the Administrative Appeal relative to the plaintiff's April 9, 2002, FOIA request was sent forward, but that upon appeal, a search revealed a 1988 case file that might be responsive to his FOIA request pertaining to Robert Ofcky, Jr. (DPFF ¶ 100; Graham Decl. III ¶ 10.) The Disclosure Division asked the plaintiff whether he wished to receive the information related to this additional file. (DPFF ¶ 101; Graham Decl. III ¶ 10 & Ex. H.) In a letter dated January 22, 2003, the plaintiff responded that the 1988 file should be included in his FOIA request. (DPFF ¶ 102; Graham Decl. III ¶ 11 & Ex. I.)

By letter dated March 19, 2003, the Disclosure Division informed the plaintiff that the FOIA request was granted in part. (DPFF ¶ 110; Graham Decl. III ¶ 16.) Pursuant to the letter, the Disclosure Division was releasing disclosable portions of documents that contained exempt information and withholding portions of the documents pursuant to § 552 (b)(2), (b)(4), and (b)(7)(C). (DPFF ¶ 111; Graham Decl. III ¶ 16.)

One hundred and forty pages of additional documents were found responsive to the request out of which approximately 92 pages were released in part, approximately 49 pages were released in full, and no pages were withheld in full. (DPFF ¶ 112; Graham Decl. III ¶ 16.) The plaintiff appealed and the OIP affirmed the decision to withhold the information under § 552(b)(2) and (b)(7)(C) and the conclusion that the information was not appropriate for discretionary release. (DPFF ¶¶ 114-116; Graham Decl. III ¶¶ 17 and 19 & Ex. Q.)

b. November 12, 2003 Request

On November 18, 2003, the plaintiff asked the ATF to provide information pertaining to a form granting permission for electronic surveillance signed by an ATF informant, Patricia Wolf. (DPFF ¶ 117; Graham III Decl.¶ 20; PPFF ¶ 28.) The plaintiff attached what is believed to be court testimony referring to this form in his request. (DPFF ¶ 118; Ex. R, letter dated November 12, 2003; Graham Decl. III ¶ 20.) By letter dated February 5, 2004, the Disclosure Division informed the plaintiff that it was unable to conduct the search he requested because the records concerned another person and the plaintiff did not provide a privacy waiver in the request. (DPFF ¶ 119; Graham Decl. III ¶ 21; PPFF ¶ 31.)

The plaintiff appealed the ATF's February 5, 2004, decision but, the OIP affirmed the action stating that the denial of the FOIA request was proper because, without the consent of an individual or proof of death either confirming or denying the existence of law enforcement records concerning that person, could be an unwarranted invasion of personal privacy under Exemption (b)(7)(C). (DPFF ¶¶ 121, 123-124; Graham Decl. III ¶¶ 22, 24-25; Exs. T & V; PPFF ¶ 32.)

c. April 12, 2007 Request

On April 18, 2007, the Disclosure Division received by mail a letter dated April 12, 2007, from the plaintiff requesting unredacted information from one page of a three-page report purportedly prepared by ATF special agents. (DPFF ¶ 125; Graham Decl. III ¶ 27 & Ex. Y.) By letter dated May 16, 2007, the Disclosure Division asked the plaintiff for an extension of time to retrieve the documents from the Field Division. (DPFF ¶ 126; Graham Decl. III ¶ 28.) The Disclosure Division is searching for documents responsive to this request. (DPFF ¶ 127; Ex. Z, letter dated May 16, 2007; Graham Decl. III ¶ 28.)

### 3. **Responses to the Plaintiff's Requests in General**

The ATF has responded to each request and has released an approximate total of 278 pages of documents, at least in part, to the plaintiff.  (DPFF ¶ 129; Graham Decl. III ¶ 29.)  Where there is an obvious exemption that will preclude the requester from obtaining requested documents or files, the Disclosure Specialists will not review the underlying case file once a determination is made that an exemption will be applied.  (DPFF ¶ 147; Graham Decl. IV ¶ 4.)

ATF Special Agents do not maintain possession and control over their closed case files, and Special Agents are often reassigned to different Field Divisions; thus providing the names of case agents does not always indicate where the investigation originated.  (DPFF ¶ 152; Graham Decl. IV ¶ 5.)  The Disclosure Division utilizes the information provided by a requester, such as a case name or subject or other detailed information, to locate a case number, as all cases should be indexed and retrievable under a case number.  (DPFF ¶ 154; Graham Decl. IV ¶ 5.)  Without a case number, attempts by a Field Division to locate a single document in a mass of case files would be extremely difficult, time-consuming and unreasonable.  (DPFF ¶ 155; Graham Decl. IV ¶ 5.)

Whether employees or special agents will be contacted in regard to a particular case file is determined on a case-by-case basis.  (DPFF ¶ 166; Graham Decl. IV ¶ 6.)  Moreover, a policy requiring that ATF must contact Special Agents every time a file cannot be located would be extremely burdensome and is not likely to yield results.  (DPFF ¶ 165; Graham Decl. IV ¶ 6.)

Simply providing the names of case agents is not enough to begin a search without more detailed and accurate information. (DPFF ¶ 167; Graham Decl. IV ¶ 6.) In most instances, when a requester provides additional information, a case file is located. (DPFF ¶ 169; Graham Decl. IV ¶ 6.)

**C.    Relevant Undisputed Facts from the Plaintiff's Proposed Findings of Fact**

With respect to the search for the documents at issue in this case, the OIP did not direct the ATF to contact agency personnel with a close nexus to the particular documents. (PPFF ¶ 19.) In response to the plaintiff's civil complaint in this case, the ATF contacted its Chicago Field Division to search for the requested documents and agency personnel "with first hand knowledge of the documents" as the plaintiff had originally requested. (PPFF ¶¶ 24 and 25.)

An ATF disclosure specialist can contact any one of the components of the Department of Justice and request assistance in locating a record, but the ATF cannot release the files of another department or component of the Department of Justice nor can the Department of Justice release ATF's files. (PPFF ¶ 55; Def.'s Resp. to PPFF ¶ 55; Graham Decl. IV ¶ 3.

## IV.  ANALYSIS

**A.    Plaintiff's FOIA Requests for Documents 1 and 2**

The defendant contends that Documents 1 and 2 were properly redacted inasmuch as they were exempt under 5 U.S.C. § 552(b)(7)(C) which excludes from disclosure records or information compiled for law enforcement purposes, "but only to the extent that such records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." Although the plaintiff does not dispute that he seeks disclosure

18

of law enforcement records or that the exemption under 5 U.S.C. § 552(b)(7)(C), is otherwise applicable, he maintains that the privacy concerns at stake are unwarranted because the redacted information is already in the public domain.[10]

Courts have recognized that the privacy interest in non-disclosure of identifying information may be diminished where information is already in the public domain. *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276 (D.C. Cir. 1992). Under the public domain doctrine, "if identical information is truly public, then enforcement of an exemption cannot fulfill its purpose." *Niagara Mohawk Power Corp. v. U.S. Dep't of Energy,* 169 F.3d 16, 19 (D.C. Cir. 1999).

To demonstrate that material has entered the public domain, the requester bears the initial burden of "pointing to specific information in the public domain that appears to duplicate that being withheld." *Davis,* 968 F.2d at 1279 (citing *Afshar v. Dep't of State*, 702 F.2d 1125, 1130-34 (D.C. Cir. 1983)). That is, the party advocating disclosure it claims to be public domain bears the initial burden of production. *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999)(citing *Niagara Mohawk Power Corp.*,169 F.3d at 19)). "[W]ere it otherwise, the government would face the daunting task of proving a negative - that the requested information had not been previously disclosed." *Cottone*, 193 F.3d at 554.

According to the plaintiff, Documents 1 and 2 have entered the public domain because Agent Holmes testified about these documents during the plaintiff's criminal trial, *United States v. O'Neill*, No. 97-CR-0098. In connection with the defendants' first motion for summary judgment, the court concluded that there was a genuine issue of material fact as

---

[10] In its order of March 26, 2007, the court rejected the plaintiff's alternative argument that no privacy concerns were at stake because the public interest in the disclosure outweighs any individual privacy interest. (Doc. #31 at 17.)

to whether Documents 1 and 2 had entered the public domain. Specifically, the court ruled that there was a dispute as to whether pages 1994 and 1995 were marked as Exhibit 1994 and Exhibit 1995 and admitted into evidence, in their entirety, at trial in *United States v. O'Neill*, Case Number 97-CR-0098.

The undisputed evidence proffered in connection with the most recent motions for summary judgment reveals that neither page 1994 nor page 1995 was entered into evidence in plaintiff's criminal case. Further, there is no evidence before the court suggesting that these documents were read into the record in their entirety. Therefore, the plaintiff has failed to show that the information he seeks – unredacted versions of pages 1994 and 1995 – was made public in Case Number 97-CR-0098.

Moreover, the uncontested evidence shows that unredacted versions of pages 1994 and 1995 were not made public in the instant case. It is true that the plaintiff included a copy of *redacted* versions of pages 1994 and 1995 with his complaint. Likewise, copies of pages 1994 and 1995 in redacted form were attached to the declaration of Averill P. Graham filed in this case on November 15, 2005. It is also true that these redacted versions included the names of various persons involved in law enforcement. However, the plaintiff is not seeking the names of those persons as disclosed in the redacted versions. If he were, this claim would be moot, as plaintiff would have the information he seeks. Rather, plaintiff seeks completely *unredacted* versions of pages 1994 and 1995, and he has not demonstrated that there is a permanent public record of the *exact* unredacted material he seeks to have released. *Davis*, 968 F.2d at 1279.

Furthermore, persons mentioned in law enforcement records do not lose all of their rights to privacy merely because their names have been disclosed. *See, e.g., Fiduccia*

*v. U.S. Dept. of Justice*, 185 F.3d 1035, 1047 (9th Cir. 1999) (privacy interests not lost by reason of earlier publicity); and *Halpern v. F.B.I.*, 181 F.3d 279, 297 (2d Cir. 1999) ("Confidentiality interests cannot be waived through prior public disclosure . . . ."). Previously, the court has concluded that the privacy interests of law enforcement officers and third parties in this case is greater than the public interest in disclosure. *O'Neill v. U.S. Dep't of Justice*, Case Number 05-C-306 at 16-17 (E.D. Wis. Mar. 26, 2007) (Doc. #31). Thus, for the reasons stated above, the plaintiff has failed to satisfy his burden of "pointing to specific information in the public domain that appears to duplicate that being withheld." *Id.* As a result, summary judgment will be granted in favor of the defendant with respect to plaintiff's claim that Documents 1 and 2 were properly redacted.

**B.    Policy of Violating the FOIA**

The plaintiff claims that the ATF has a pattern and practice of violating the FOIA in that it fails to search for documents and "refus[es] to contact agency personnel with a nexus to missing records (unless a suit is filed). . . ." Plaintiff's Brief in Support of Motion for Summary Judgment at 22 (Doc. #48). As relief, he seeks an injunction that would require the Department of Justice "to contact agency personnel when its automated or manual search methods fail to locate responsive records - and where there is a close nexus between the particular record and agency personnel." Complaint at 4. In response, the defendants argue that the plaintiff's claim is not ripe for judicial review and, alternatively, that injunctive relief is not appropriate in this case.

In determining whether a claim is ripe for judicial review, a court is to evaluate "the fitness of the issue for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967). With respect

to the "fitness of the issue" prong of the ripeness test, a case is considered ripe "when it presents a concrete legal dispute [and] no further factual development is essential to clarify the issues, . . . [and] there is not doubt whatever that the challenged agency practice has crystallized sufficiently for purposes of judicial review." *Public Citizen v. Department of State*, 276 F.3d 634, 641 (D.C. Cir. 2002) (quoting *Rio Grande Pipeline Co. v. F.E.R.C.*, 178 F.3d 533, 540 (D.C. Cir. 1999)).  The defendant argues that the plaintiff's claim is not ripe because there is no evidence that the ATF has a "crystallized" policy of failing to search for documents or "refus[ing] to ever contact agency personnel with a nexus to missing records. . . ." *See* Pl.'s Brief in Support at 22.

Claims alleging a "pattern and practice" of violating the FOIA have been deemed ripe in limited circumstances, such as where there exists a written, generally applicable policy, *see, e.g., Public Citizen*, 276 F.3d at 641-42 (challenge to "published [FOIA] guidance" ripe for review); *Better Government Ass'n v. Department of State*, 780 F.2d 86 (D.C. Cir. 1986) (challenge to published FOIA guidelines and regulation ripe for review), or where such claims are predicated upon specific conduct that has been repeated over time, *see, e.g., Payne Enters, Inc. v. United States*, 837 F.2d 486 (D.C. Cir. 1988) (agency's practice of unjustified delay in responding to repeated requests from one entity for one specific type of document was sufficiently crystallized); *compare Regional Management Corp., Inc. v. Legal Services Corp.*, 186 F.3d 457, 464-66 (4th Cir. 1999) (challenge to alleged FOIA action was not ripe because it was unclear that the agency had a fully developed policy of responding to a particular type of request).

In the case at hand, the plaintiff has not pointed to any written, generally applicable FOIA guideline setting forth the alleged improper policy.  In addition, there is no

22

evidence that the plaintiff submitted substantially identical requests to the ATF for documents and received substantially identical responses which would support the existence of a crystallized policy or practice by way of repeated, specific conduct. For example, in response to the plaintiff's April 2002 request for information concerning Robert Ofcky, Jr., documents were located and disclosable portions were initially released to the plaintiff. Subsequently, the plaintiff was notified that another file had been located and additional disclosable information was released. Portions of documents were withheld pursuant to the exemptions identified in § 552(b)(2), (b)(3) and (b)(7), and the OIP affirmed the determination that these exemptions were applicable.

Plaintiff's November 2003 request sought information relating to a form granting electronic surveillance signed by an informant. The ATF did not provide any records in response to this request because plaintiff did not provide the requisite privacy waiver. The ATF's decision was affirmed by the OIP on appeal. Finally, the record shows that the Disclosure Division is currently searching for responsive documents with respect to plaintiff's recent request in April 2007 seeking unredacted information from a report purportedly prepared by ATF special agents.

As shown above, the undisputed facts establish that each of plaintiff's previous FOIA requests to the ATF was unique and none involved a situation where the ATF refused or neglected to contact agency personnel with a nexus to missing records in the course of conducting a search. Thus, the plaintiff's prior conduct with the ATF cannot establish the existence of a policy or practice.

Essentially, the plaintiff's argument appears to be that to comply with the dictates of the FOIA, the ATF should always be required to contact agency personnel to

determine if they know of any leads concerning the location of missing documents even when a requester provides nothing more than the names of the persons named in the document or in the preparation of the document. He maintains that the ATF's response to his June 2, 2004, request for documents which stated that "[p]roviding the names of ATF Special Agents is not enough information to conduct a search" evinces a policy statement on the part of the ATF because it suggests that no inquiry of agency personnel will ever be made by the ATF in such circumstances. Further, plaintiff contends that such "policy" is unreasonable and violates the ATF's obligation under the FOIA as recognized by the Court of Appeals for the District of Columbia in *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321 (D.C. Cir. 1999), which held that "[w]hen all other sources fail to provide leads to the missing record, agency personnel should be contacted if there is a close nexus . . . between the person and the particular record." *Id.* at 328.

The problem with plaintiff's reliance on *Valencia-Lucena* is that it is distinguishable inasmuch as it dealt with a requester's right to challenge the reasonableness of an agency's search when the agency denied an FOIA request on the ground that no responsive records can be found. In the instant case, the challenged ATF response was not a denial of the plaintiff's request but simply a notification that the ATF needed more information to conduct a search of its records. (PPFF ¶ 15; Graham Decl. I ¶ 4; Ex. B; Graham Decl. III ¶ 31.) More important, *Lucena-Valencia* supports the ATF's conduct in this case because it acknowledged that agencies need only contact agency personnel with a close nexus to the case "[w]hen all other sources fail to provide leads to the missing records." Here, the ATF's response to plaintiff's June 2, 2004, FOIA request reveals that it was attempting to

obtain other sources of information which would provide leads to the records plaintiff is seeking.

Furthermore, contrary to plaintiff's assertion, *Valencia-Lucena*, does not stand for the proposition that agency personnel must be contacted in all circumstances regardless of the level of information provided by the requester as it acknowledged that such an inquiry would be pointless where the personnel was no longer employed by the agency or where the records are controlled by other persons. *Id.* at 328. The evidence in this case shows that the ATF's decision to contact agency personnel is made on a case-by-case basis as opposed to a blanket policy against contacting agency personnel as suggested by the plaintiff. (DPFF ¶ 166; Graham Decl. IV ¶ 6.) Therefore, because the plaintiff has not shown that the ATF had a policy of violating the FOIA, his claim is not ripe for judicial review. Hence,

**IT IS ORDERED** that the plaintiff's motion for judicial notice (Doc. #33 ) is **GRANTED.**

**IT IS FURTHER ORDERED** that the defendant's motion for summary judgment (Doc. # 37) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (Doc. # 47) is **DENIED.**

**IT IS FURTHER ORDERED** that this action is **DISMISSED,** with prejudice.

Dated at Milwaukee, Wisconsin, this 25th day of March, 2008.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. DISTRICT JUDGE